**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| JANE DOE (a pseudonym),<br><br>Plaintiff,<br><br>v.<br><br>ELIJAH DARYMAN;<br><br>AYLO HOLDINGS S.à R.L.;<br><br>AYLO FREESITES LTD d/b/a PORNHUB;<br><br>AYLO USA INCORPORATED; and<br><br>X CORP.,<br><br>Defendants. | CIVIL ACTION NO.:<br><br>2:26-cv-07534<br><br>JURY TRIAL DEMANDED |

**COMPLAINT**

## I. INTRODUCTION

1. Plaintiff Jane Doe, by and through her undersigned counsel, brings this action against Defendant Elijah Daryman for sex trafficking and forced labor in violation of the Trafficking Victims Protection Reauthorization Act, 18 U.S.C. §§ 1589, 1591, 1594, and 1595 (the "TVPRA"), nonconsensual disclosure of intimate images in violation of 15 U.S.C. § 6851, human trafficking in violation of 18 Pa.C.S. § 3051, and unlawful dissemination of intimate images in violation of 42 Pa.C.S. § 8316.1 and N.J.S.A. 2A:58D-1; against Defendants Aylo Holdings S.à r.l., Aylo Freesites Ltd d/b/a Pornhub, and Aylo USA Incorporated for knowingly benefiting from participation in that trafficking venture in violation of 18 U.S.C. §§ 1591(a)(2) and 1595(a); and against the Aylo Defendants and Defendant X Corp. for unauthorized use of her name and likeness

in violation of 42 Pa.C.S. § 8316 and Pennsylvania common law, against the Aylo Defendants for failing to remove nonconsensual intimate visual depictions of Plaintiff within 48 hours of a valid removal request, as Section 3 of the TAKE IT DOWN Act, Pub. L. No. 119-12 (2025), requires, and for their own nonconsensual disclosure of those depictions in violation of 15 U.S.C. § 6851; together with related common-law torts, and seeks injunctive relief, monetary damages, and all other relief that this Court, in its discretion, deems just and proper.

2. From in or about 2021 through in or about 2023, Daryman used strangulation, beatings, and the total confiscation of Plaintiff's income to force a teenaged Plaintiff to perform commercial sex acts on internet webcam and subscription platforms while he kept every dollar those performances generated.

3. Daryman's conduct is not historical. As recently as June 2026, Daryman created new accounts on the X platform in Plaintiff's name and likeness for the purpose of continuing to advertise and distribute sexually explicit content of Plaintiff that was obtained through force and coercion, all without Plaintiff's consent.

4. The platform Defendants have monetized that content, and each continued to publish it after Plaintiff personally notified them in writing that the content was nonconsensual and demanded its removal.

## II. PARTIES

5. Plaintiff Jane Doe is an adult individual residing in Philadelphia, Pennsylvania, where she has resided at all times relevant to this Complaint except as otherwise alleged herein. Plaintiff sues under a pseudonym pursuant to her Motion for Leave to Proceed Under Pseudonym, filed contemporaneously herewith, and has filed a declaration disclosing her true identity under seal. Plaintiff will disclose her identity to Defendants subject to an appropriate protective order.

6. Defendant Elijah Daryman is an adult individual who, upon information and belief, resides at his parents' home at 61 Battery Hill Drive, Voorhees, Camden County, New Jersey 08043, and who formerly resided with Plaintiff in Philadelphia, Pennsylvania.

7. Defendant Aylo Holdings S.à r.l., formerly known as MindGeek S.à r.l., is a foreign company organized under the laws of Luxembourg with its principal place of business in Luxembourg, and directly or through its subsidiaries owns and operates the website Pornhub.com.

8. Defendant Aylo Freesites Ltd d/b/a Pornhub is a foreign limited company organized under the laws of the Republic of Cyprus and is the named operator of the website Pornhub.com, an advertising-supported website that publishes and monetizes sexually explicit video content.

9. Defendant Aylo USA Incorporated is a corporation organized under the laws of the State of Delaware with a principal place of business in Woodland Hills, California, that conducts United States operations for the Aylo enterprise, and is named together with the Defendants identified in Paragraphs 7 and 8 (collectively, the "Aylo Defendants").

10. Defendant X Corp. is, upon information and belief, a Nevada corporation with its principal place of business in Bastrop, Texas, is the successor in interest to Twitter, Inc., and owns and operates the social-media platform X, formerly known as Twitter.

## III. <u>JURISDICTION AND VENUE</u>

11. This Court has subject-matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 because Plaintiff asserts claims arising under the laws of the United States, including the Trafficking Victims Protection Reauthorization Act, 18 U.S.C. §§ 1589, 1591, 1594, and 1595, and 15 U.S.C. § 6851.

12. This Court has supplemental jurisdiction over Plaintiff's state-law claims pursuant to 28 U.S.C. § 1367 because those claims arise from the same nucleus of operative fact and form part of the same case and controversy as Plaintiff's federal claims.

13. This Court has personal jurisdiction over Defendant Daryman because he resided in Philadelphia, Pennsylvania during much of the conduct alleged herein, committed tortious acts in Pennsylvania, and has directed and continues to direct tortious conduct at a Pennsylvania resident knowing that the resulting harm would be felt in Pennsylvania.

14. This Court has personal jurisdiction over the Aylo Defendants because they operate interactive, commercial, advertising-supported websites purposefully directed at and accessible in Pennsylvania, they published and monetized sexually explicit content depicting a Pennsylvania resident, and they continued to do so after receiving written notice from Plaintiff, a Pennsylvania resident, that the content was nonconsensual; in the alternative, jurisdiction is proper over the foreign Aylo Defendants pursuant to Federal Rule of Civil Procedure 4(k)(2).

15. This Court has personal jurisdiction over Defendant X Corp. because it operates an interactive, commercial social-media platform purposefully directed at and accessible in Pennsylvania, it published content depicting and impersonating a Pennsylvania resident, and it continued to do so after receiving written notice from Plaintiff that the content was nonconsensual.

16. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events and omissions giving rise to Plaintiff's claims occurred in this District and a substantial part of the harm was suffered by Plaintiff in this District.

17. At all relevant times, the conduct alleged herein was in and affecting interstate and foreign commerce, including because it was carried out by means of the internet, interstate travel, and interstate electronic communications.

## IV. FACTUAL ALLEGATIONS

### A. DARYMAN TAKES CONTROL OF A TEENAGED GIRL

18. Plaintiff Jane Doe was born on December 16, 2002, and was a teenager during the events with which this Complaint begins.

19. Plaintiff met Defendant Daryman in or about 2020, when both were teenagers, and the two began a dating relationship shortly after they met.

20. In or about late 2020 or early 2021, shortly after Plaintiff turned eighteen years old, Plaintiff and Daryman moved into an apartment in Philadelphia, Pennsylvania that was leased in Plaintiff's name alone.

21. Throughout the parties' cohabitation, Daryman refused to obtain employment of any kind and contributed no lawful income to the household, notwithstanding Plaintiff's repeated requests that he do so.

22. Plaintiff worked at a Shake Shack restaurant, and her wages from that employment were the household's only legitimate source of income during this period.

23. Daryman demanded that Plaintiff perform sexually explicit webcam shows and produce sexually explicit content for paid internet platforms, telling her that she, and not he, would earn the money on which they would live.

24. When Plaintiff resisted, Daryman became physically violent with her, and his violence thereafter became a regular feature of the relationship and the primary instrument by which he controlled her.

25. Daryman repeatedly struck Plaintiff with both an open hand and a closed fist, most often by slapping her across the face, and on multiple occasions he strangled her.

26. Plaintiff photographed the bruising that Daryman's violence left on her body.

## B. THE COERCED COMMERCIAL SEX SCHEME

27. Through the violence described above and the constant threat of further violence, Daryman compelled Plaintiff to perform live sexually explicit webcam shows on the platforms Chaturbate and CamSoda and to produce sexually explicit photographs and videos for an OnlyFans account.

28. Each such performance and each such item of content was a commercial sex act: viewers and subscribers paid money on account of Plaintiff's sexual performances, and that money was collected through the platforms' payment systems.

29. Daryman registered and controlled every one of the accounts, held all usernames and passwords exclusively, and at no time gave Plaintiff access to the credentials for any account operated in her name or likeness.

30. Daryman personally selected, posted, and published the content on each platform, dictated what Plaintiff would perform and when, and scripted the sexual conduct that Plaintiff was made to perform.

31. Daryman collected and kept one hundred percent of the proceeds of Plaintiff's coerced performances, and Plaintiff had no access to the accounts into which those proceeds were paid or to any of the money they generated.

32. When Plaintiff refused a demand, deviated from Daryman's instructions, or performed in a manner Daryman deemed unsatisfactory, Daryman beat her.

33. None of Plaintiff's performances or content was consensual; every performance was procured through force, threats of force, physical restraint, and a scheme intended to make Plaintiff believe that refusal would result in serious harm to her.

34. Plaintiff performed because she was afraid of what Daryman would do to her if she did not, and her fear was well founded in his repeated actual violence.

## C. THE POLICE REPORT, THE CRIMINAL CHARGES, AND THE RESTRAINING ORDER

35. On or about November 24, 2021, following an incident of Daryman's abuse, Plaintiff went to the police, and a criminal complaint was signed against Daryman by a law-enforcement officer in Berlin Borough Municipal Court, Camden County, New Jersey, docketed as Complaint No. S 2021 190, Police Case No. 2021-12495.

36. The original charge against Daryman was terroristic threats in violation of N.J.S.A. 2C:12-3(b), that is, threatening an imminent death with the purpose of putting the victim in fear, and the complaint was transferred to the Camden County Prosecutor on or about November 29, 2021 as an indictable offense before being returned to the municipal court on or about February 23, 2022 on charges including harassment in violation of N.J.S.A. 2C:33-4 and disorderly conduct in violation of N.J.S.A. 2C:33-2(a)(2).

37. In connection with that incident, Plaintiff obtained a temporary restraining order against Daryman [DATE AND COURT OF TRO TO BE CONFIRMED FROM RECORDS].

38. Daryman failed to appear for his scheduled court date of July 18, 2022, and on July 20, 2022 the court issued a bench warrant for his arrest with bail set at one thousand dollars.

39. Upon information and belief, that warrant remains outstanding to this day, and the charges against Daryman remain active.

40. Daryman thereafter continued to exercise control over Plaintiff through violence and intimidation, a pattern of coercive control under which Plaintiff, like many victims of intimate-partner abuse, remained in the relationship notwithstanding her report to the police.

## D. PUERTO RICO: ISOLATION AND ESCALATION

41. In or about September or October of 2022, within weeks after the bench warrant for his arrest issued in New Jersey, Daryman took Plaintiff from the Philadelphia area to Puerto Rico.

42. In Puerto Rico, Plaintiff was separated from her family, her friends, her employment, and every support system available to her, and she was dependent on Daryman in a place where she had no one else.

43. Daryman's physical abuse of Plaintiff escalated in Puerto Rico, and Plaintiff felt, and was, even more coerced than she had been in Philadelphia.

44. Throughout the parties' time in Puerto Rico, Daryman continued to compel Plaintiff to perform commercial sex acts for the webcam and subscription platforms, and the resulting content moved in interstate and foreign commerce.

45. Daryman and Plaintiff returned from Puerto Rico on or about August 15, 2023, and thereafter lived on Ludlow Street in Philadelphia, Pennsylvania.

## E. PLAINTIFF ESCAPES

46. After returning to Philadelphia, Plaintiff took a job as a waitress at a gentlemen's club in order to earn income of her own.

47. A coworker at the club observed the bruising on Plaintiff's body and confronted her about it, and that conversation persuaded Plaintiff that she had to leave Daryman.

48. Because Daryman kept every dollar generated by the OnlyFans account and the webcam performances, Plaintiff had no savings and no access to money with which to leave him.

49. Plaintiff began dancing at the club because it was the only source of income available to her that Daryman could not intercept, and she viewed it, accurately, as her only way out of the relationship.

50. When Plaintiff had earned enough money to leave Daryman, she did so, in or about August 2023, and she cut off all contact with him.

51. After Plaintiff went no-contact, Daryman took Plaintiff's cat, and Plaintiff was able to recover the animal only after she received word that Daryman had been evicted from his residence.

52. Since the separation, Daryman has repeatedly attempted to contact Plaintiff through telephone numbers she does not recognize and has not saved, circumventing the fact that Plaintiff has blocked every number she knows to be his.

53. Plaintiff has at all times since the separation communicated, by her silence and by blocking him, that she wants no contact with Daryman of any kind.

## F. <u>THE PORNHUB ACCOUNT</u>

54. At a time presently unknown to Plaintiff, Daryman created an account and public content page on the website Pornhub.com under the alias "Lyla Luv," trading entirely on Plaintiff's likeness, without Plaintiff's knowledge, participation, or consent.

55. Daryman posted seven sexually explicit videos depicting Plaintiff to the "Lyla Luv" page, including content that had been obtained from her through the force and coercion described above.

56. Plaintiff has never possessed the credentials for the Pornhub account, has never had any ability to control it, and has never received any money generated by it.

57. In 2024, Plaintiff sent an electronic message to Pornhub stating that the content of her on the site was not consensual and demanding that it, including all seven videos, be taken down.

58. Neither Pornhub nor any Aylo entity ever responded to Plaintiff's demand, and all seven videos remained publicly available and monetized on the site for approximately two years after that notice.

59. On or about August 20, 2026, Plaintiff located and used a different takedown mechanism offered by Pornhub and again demanded removal of the nonconsensual content depicting her, including the entire "Lyla Luv" page and the content on it.

60. In response to that second demand, Pornhub removed five of the seven videos depicting Plaintiff, but two of the videos and the "Lyla Luv" account itself remained publicly available on the site until September 21, 2026. The removal of five videos on demand in 2026 establishes that the Aylo Defendants possessed both the technical ability and the administrative control to remove this content at any time after Plaintiff's 2024 notice; that their failure to remove it for approximately two years was a choice rather than an incapacity; and that they elected to continue publishing two of the videos, and the account itself, until September 21, 2026, with actual knowledge, twice given, that the content depicting Plaintiff was nonconsensual.

## G. <u>THE X ACCOUNTS</u>

61. Daryman also created an account on the X platform in Plaintiff's name, kept the credentials exclusively to himself, and used the account to advertise and link to the Pornhub and OnlyFans content depicting Plaintiff.

62. Daryman posted nude images of Plaintiff to that X account without her consent, in addition to using the account to drive paying traffic to the coerced content on the other platforms.

63. In 2024, Plaintiff sent an electronic message to X demanding that the account and the nonconsensual content be taken down.

64. X never responded to Plaintiff's demand, and the account and its content remained publicly available on the platform.

65. On or about August 21, 2026, Plaintiff discovered an additional X account, using the handle @lylaluvxxx, which upon information and belief was created in or about June 2026 and

which is linked to the "Lyla Luv" Pornhub page depicting Plaintiff; Plaintiff also discovered a related account using the handle @lylaluvv, and both handles adopt the same "Lyla Luv" alias under which Daryman operates the Pornhub page, evidencing common creation and control of the accounts across the platforms.

66. Upon information and belief, Daryman created and operates the @lylaluvxxx and @lylaluvv accounts, and he uses them to post links to and advertisements for sexually explicit content depicting Plaintiff, all without Plaintiff's consent.

67. Daryman's creation and operation of these accounts, and his publication and promotion of sexually explicit content depicting Plaintiff, is ongoing as of the filing of this Complaint.

## H. THE AYLO DEFENDANTS VERIFIED THE ACCOUNT IN PLAINTIFF'S NAME AND PAID DARYMAN

68. The Aylo Defendants do not permit anonymous monetized uploading. Upon information and belief, before an account may publish content on Pornhub.com and receive payment for it, the Aylo Defendants require the account holder to complete an identity-verification process that includes the submission of government-issued photographic identification and a signed consent or release, and require the submission of payment and tax information before any payout is made.

69. Upon information and belief, the "Lyla Luv" account was verified through that process using Plaintiff's own government-issued identification, which Daryman submitted to the Aylo Defendants using documents and credentials he had taken from Plaintiff and to which he alone thereafter retained access.

70. Plaintiff did not complete, participate in, authorize, or know of that verification. Plaintiff never submitted her identification to the Aylo Defendants and never signed any consent or release permitting the publication of any content depicting her on Pornhub.com.

71. Upon information and belief, the Aylo Defendants thereafter paid the earnings generated by the "Lyla Luv" account to Daryman, or to an account he designated and controlled, and did so on a recurring basis for as long as the account generated revenue.

72. Upon information and belief, the payee and payment information the Aylo Defendants collected and used to make those payments did not correspond to the identity documents on which the account had been verified, so that the Aylo Defendants were remitting to a man the proceeds of content sold under a woman's identity.

73. The records establishing these facts are in the exclusive possession, custody, and control of the Aylo Defendants, and include, without limitation, the account's registration and verification submissions; the images of the identification submitted; any consent, release, or model agreement on file; account creation, credential, and password-change logs; the internet-protocol addresses and device identifiers from which the account was created and operated; the tax and payment information collected in order to make payout; and the payout, banking, and transaction records for the account.

74. By requiring verification and then verifying an account in Plaintiff's name on documents Plaintiff never submitted, by publishing and monetizing content through that account, and by remitting the proceeds to a man who was not the person the account had been verified to be, the Aylo Defendants did not merely host material uploaded by an anonymous stranger. They transacted directly and repeatedly with the trafficker, on terms they set, and their own systems recorded every transaction.

## I. THE PLATFORMS PROFITED, WITH NOTICE

75. The Aylo Defendants operate Pornhub.com as an advertising-supported commercial enterprise and derived revenue from every visitor who viewed any of the seven nonconsensual

videos depicting Plaintiff during the approximately two years those videos remained on the site after Plaintiff's written demand.

76. Defendant X Corp. derives revenue from the operation of its platform, including from the accounts and content described above, through advertising served against and adjacent to that content, through the subscription and creator-monetization features it makes available to accounts distributing adult content, and through the user engagement such accounts generate and that X Corp. sells to advertisers. Upon information and belief, X Corp.'s own systems recorded the creation, the adult-content designation, and the engagement metrics of each of the accounts described herein.

77. Each platform Defendant received actual written notice from Plaintiff that the content depicting her was nonconsensual, and each continued thereafter to host, publish, and monetize that content.

78. Upon information and belief, the platform Defendants also knew or should have known from the circumstances of the accounts themselves, including third-party control of accounts trading on a young woman's likeness, that the content had been uploaded and was being exploited by someone other than Plaintiff.

79. Upon information and belief, each platform Defendant, through its own recommendation systems, promoted the accounts and content depicting Plaintiff to users who had not searched for them: the Aylo Defendants by presenting the "Lyla Luv" videos as related or recommended content alongside other videos on Pornhub.com, and X Corp. by surfacing the accounts and their posts in the algorithmically curated feeds it serves to its users. Those recommendations were the platform Defendants' own editorial choices about which content to

amplify, made by their own systems, and were not information provided by another information content provider.

## J. PLAINTIFF'S INJURIES

80. As a direct and proximate result of Defendants' conduct, Plaintiff has suffered and continues to suffer severe emotional distress, humiliation, embarrassment, anxiety, and fear, including the ongoing fear that acquaintances, employers, and strangers have seen and will see the content.

81. Prior to being taken to Puerto Rico, Plaintiff was diagnosed with, and was treated by a counselor for, borderline personality disorder, a condition from which she continues to suffer to this day and which she attributes to Daryman's physical and psychological abuse and to his creation and exploitation of the coerced intimate content depicting her.

82. Plaintiff suffers frequent panic attacks and a loss of her sense of self, and her anxiety manifests physically, including in outbreaks of hives and psoriasis.

83. Plaintiff has also suffered economic injury, including the loss of the entirety of the proceeds of the performances and content that Daryman compelled her to produce and then converted to his own use.

84. Because the sexually explicit content depicting Plaintiff remains publicly viewable, and may remain viewable indefinitely, Plaintiff reasonably believes that she will never be able to obtain and hold ordinary employment, and the continued availability of the content constitutes an ongoing impairment of her employability and earning capacity in an amount to be established at trial.

85. Plaintiff suffers new and continuing injury each day the content remains available, and no judgment at law can fully remedy the continued publication of sexually explicit images of her that were obtained through violence; her remedy at law is inadequate and her injury is irreparable.

86. The conduct alleged herein constituted a continuing course of conduct that persisted through the parties' separation and continues through the present, and any applicable limitations period was tolled during the time Plaintiff remained under Daryman's coercive control and physical domination.

**COUNT I - TVPRA SEX TRAFFICKING BY FORCE, FRAUD, OR COERCION, 18 U.S.C. §§ 1591, 1595**

**(AGAINST DEFENDANT DARYMAN)**

87. The allegations set forth in the preceding paragraphs are incorporated herein by reference as though set forth in full.

88. Plaintiff's live webcam performances and the sexually explicit content she was made to produce were commercial sex acts within the meaning of 18 U.S.C. § 1591(e), because things of value, including subscription payments, tips, and other platform payments, were given and received on account of them.

89. Daryman knowingly recruited, enticed, harbored, transported, provided, obtained, and maintained Plaintiff, in and affecting interstate and foreign commerce, for the purpose of causing her to engage in commercial sex acts.

90. Daryman knew, and recklessly disregarded the fact, that means of force, threats of force, fraud, and coercion would be used to cause Plaintiff to engage in those commercial sex acts, because he himself supplied the force, the threats, and the coercion.

91. Daryman transported Plaintiff from Pennsylvania to Puerto Rico and back in furtherance of the scheme, further isolating her and escalating his physical abuse while continuing to compel her performances.

92. Daryman knowingly benefited financially from the scheme, collecting and retaining the entirety of the proceeds of Plaintiff's coerced commercial sex acts.

93. Plaintiff is a victim of a violation of 18 U.S.C. § 1591 and brings this action pursuant to 18 U.S.C. § 1595(a), and as a direct and proximate result of Daryman's conduct she has suffered the injuries alleged herein.

WHEREFORE, Plaintiff Jane Doe respectfully requests judgment in her favor and against Defendant Elijah Daryman on Count I as follows: (1) compensatory damages in an amount to be determined at trial; (2) punitive damages; (3) reasonable attorneys' fees and costs pursuant to 18 U.S.C. § 1595(a); (4) injunctive relief as set forth in the Prayer for Relief; and (5) such other and further relief as the Court, in its discretion, deems just and proper.

**COUNT II - TVPRA FORCED LABOR, 18 U.S.C. §§ 1589, 1594, 1595**

**(AGAINST DEFENDANT DARYMAN)**

94. The allegations set forth in the preceding paragraphs are incorporated herein by reference as though set forth in full.

95. The live webcam performances Plaintiff was made to give, and the photographs and videos Plaintiff was made to produce, were labor and services within the meaning of 18 U.S.C. § 1589(a).

96. Daryman knowingly obtained that labor and those services from Plaintiff by means of force and threats of force against Plaintiff, by means of physical restraint and threats of physical restraint, and by means of a scheme, plan, and pattern intended to cause Plaintiff to believe that if she did not perform she would suffer serious harm, all within the meaning of 18 U.S.C. § 1589(a)(1), (a)(2), and (a)(4).

97. Daryman supplied the force himself. He struck Plaintiff with an open hand and with a closed fist, he strangled her, and he beat her when she refused a demand, deviated from his instructions, or performed in a manner he deemed unsatisfactory. He did so repeatedly and over a

period of years, so that the threat of further violence was continuously present and required no restatement.

98. Daryman compounded that coercion by confiscating the entirety of Plaintiff's earnings, which left her without money, without access to the accounts, and therefore without the practical means of leaving; and by removing Plaintiff to Puerto Rico, where she was separated from her family, her friends, her employment, and every other source of support available to her.

99. A reasonable person of the same background and in the same circumstances as Plaintiff would have been compelled by Daryman's conduct to perform the labor and services he demanded, and Plaintiff was so compelled.

100. Daryman knowingly benefited, financially and by receiving things of value, from participation in a venture that he created and directed and that engaged in the obtaining of Plaintiff's labor and services in violation of 18 U.S.C. § 1589(a), within the meaning of 18 U.S.C. § 1589(b).

101. Daryman further attempted to violate, and conspired to violate, 18 U.S.C. § 1589, and is liable under 18 U.S.C. § 1594(a) and (b).

102. Plaintiff is a victim of a violation of 18 U.S.C. § 1589 and brings this claim pursuant to the civil remedy provided by 18 U.S.C. § 1595(a).

103. This Count is pleaded independently of Plaintiff's claims arising under 18 U.S.C. § 1591, and does not depend upon whether any performance Plaintiff was compelled to give constituted a "commercial sex act" within the meaning of 18 U.S.C. § 1591(e)(3).

104. As a direct and proximate result of Daryman's conduct, Plaintiff has suffered the injuries alleged herein.

WHEREFORE, Plaintiff Jane Doe respectfully requests judgment in her favor and against Defendant Elijah Daryman on Count II as follows: (1) compensatory damages in an amount to be determined at trial; (2) punitive damages; (3) reasonable attorneys' fees and costs pursuant to 18 U.S.C. § 1595(a); (4) injunctive relief as set forth in the Prayer for Relief; and (5) such other and further relief as the Court, in its discretion, deems just and proper.

**COUNT III - UNAUTHORIZED USE OF NAME AND LIKENESS, 42 PA.C.S. § 8316**

**(AGAINST THE AYLO DEFENDANTS AND X CORP.)**

105. The allegations set forth in the preceding paragraphs are incorporated herein by reference as though set forth in full.

106. Plaintiff is a natural person whose name, image, and likeness have commercial value within the meaning of 42 Pa.C.S. § 8316(e). That value was developed through the investment of Plaintiff's own time and effort: over approximately two years, Plaintiff performed hundreds of hours of live webcam shows and produced the photographs and videos that built the "Lyla Luv" persona, its subscriber base, and its paying audience. That the investment was extracted from her by force does not make it any less hers. In the alternative, Plaintiff's likeness has demonstrable commercial value regardless of who developed it, as shown by the subscription, advertising, and engagement revenue that Defendants' own platforms generated from accounts and content trading on it.

107. The Aylo Defendants used Plaintiff's likeness for commercial and advertising purposes by hosting, publishing, and monetizing the advertising-supported "Lyla Luv" page and the videos depicting Plaintiff, without Plaintiff's written consent, and they continued that use for approximately two years after receiving written notice from Plaintiff in 2024 that the use was

unauthorized, which notice supplied actual knowledge of the unauthorized use within the meaning of 42 Pa.C.S. § 8316(d).

108. Defendant X Corp. used Plaintiff's name and likeness for commercial purposes by hosting and monetizing accounts operated in Plaintiff's name and likeness, including the accounts using the handles @lylaluvxxx and @lylaluvv, without Plaintiff's written consent, and it continued that use after receiving written notice from Plaintiff in 2024 that the use was unauthorized, which notice supplied actual knowledge of the unauthorized use within the meaning of 42 Pa.C.S. § 8316(d).

109. Plaintiff's claim under 42 Pa.C.S. § 8316 is an intellectual-property claim within the meaning of 47 U.S.C. § 230(e)(2), and the immunity conferred by 47 U.S.C. § 230 accordingly does not extend to it. See *Hepp v. Facebook*, 14 F.4th 204 (3d Cir. 2021).

110. Independently, the platform Defendants' algorithmic promotion of the accounts and content depicting Plaintiff, alleged above, was their own first-party expressive conduct, for which 47 U.S.C. § 230 affords no immunity. See Anderson v. TikTok, Inc., 116 F.4th 180 (3d Cir. 2024).

111. As a direct and proximate result of Defendants' unauthorized commercial use of Plaintiff's name and likeness, Plaintiff has suffered the injuries alleged herein, and Defendants have been unjustly enriched by revenue rightfully attributable to Plaintiff's identity.

WHEREFORE, Plaintiff Jane Doe respectfully requests judgment in her favor and against the Aylo Defendants and X Corp., jointly and severally, on Count III as follows: (1) compensatory damages, including the commercial value of the unauthorized use of Plaintiff's name and likeness; (2) disgorgement of all profits attributable to the unauthorized use; (3) punitive damages; (4) injunctive relief as set forth in the Prayer for Relief; and (5) such other and further relief as the Court, in its discretion, deems just and proper.

**COUNT IV - INVASION OF PRIVACY: APPROPRIATION OF NAME AND LIKENESS**

**(AGAINST ALL DEFENDANTS)**

112. The allegations set forth in the preceding paragraphs are incorporated herein by reference as though set forth in full.

113. Daryman appropriated Plaintiff's name, image, and likeness for his own use and financial benefit, without Plaintiff's consent, by creating and operating accounts on Pornhub, OnlyFans, X, and other platforms in Plaintiff's name and likeness and by collecting the revenue those accounts generated.

114. Daryman's appropriation of Plaintiff's identity was and is willful, was undertaken for commercial advantage, and continues through the present, including through the accounts created in 2026.

115. The Aylo Defendants and X Corp. likewise appropriated Plaintiff's name and likeness for their own commercial benefit by hosting, publishing, and monetizing the accounts and content trading on Plaintiff's likeness after receiving written notice that the use was unauthorized, and their appropriation, like Daryman's, continued for approximately two years after that notice and, as to X Corp., continues through the present.

116. Plaintiff's claim for appropriation of her name and likeness arises under Pennsylvania's law of the right of publicity and is an intellectual-property claim within the meaning of 47 U.S.C. § 230(e)(2). The immunity conferred by 47 U.S.C. § 230 accordingly does not extend to it. See *Hepp v. Facebook*, 14 F.4th 204 (3d Cir. 2021). To the extent the platform Defendants' liability rests on their own promotion of that content, it rests on their first-party conduct, to which Section 230 does not apply. See Anderson v. TikTok, Inc., 116 F.4th 180 (3d Cir. 2024).

117. As a direct and proximate result of Defendants' appropriation, Plaintiff has suffered the injuries alleged herein, including the loss of the exclusive control of her own name, likeness, and identity.

WHEREFORE, Plaintiff Jane Doe respectfully requests judgment in her favor and against all Defendants, jointly and severally where the law permits, on Count IV as follows: (1) compensatory damages in an amount to be determined at trial; (2) disgorgement of all profits derived from the appropriation of Plaintiff's name and likeness; (3) punitive damages; (4) injunctive relief as set forth in the Prayer for Relief; and (5) such other and further relief as the Court, in its discretion, deems just and proper.

## COUNT V - TVPRA BENEFICIARY LIABILITY, 18 U.S.C. §§ 1591(a)(2), 1595(a)
## (AGAINST THE AYLO DEFENDANTS)

118. The allegations set forth in the preceding paragraphs are incorporated herein by reference as though set forth in full.

119. The creation, publication, and monetization of the coerced sexually explicit content depicting Plaintiff on Pornhub.com constituted a venture within the meaning of 18 U.S.C. § 1595(a), in which the Aylo Defendants participated by hosting, publishing, distributing, and monetizing the content.

120. The Aylo Defendants knowingly benefited financially from that venture, including through advertising revenue generated by the pages on which the content depicting Plaintiff was published.

121. The Aylo Defendants knew or should have known that the venture involved violations of 18 U.S.C. § 1591, including because Plaintiff notified them in writing in 2024 that the content depicting her was not consensual, and they nevertheless continued to host, publish, and monetize

all seven videos for approximately two years thereafter, and continue to host two of them as of the filing of this Complaint.

122. The Aylo Defendants' participation in that venture was not passive hosting. They required and conducted an identity verification for the account; they accepted Plaintiff's government-issued identification from a person who was not Plaintiff; they collected the payment and tax information necessary to remit the account's earnings; and they paid those earnings to Daryman on a recurring basis. Each of those acts was a direct transaction between the Aylo Defendants and the trafficker, on terms the Aylo Defendants set, and each is recorded in the Aylo Defendants' own systems.

123. Through that verification and payment relationship, the Aylo Defendants knew the identity on which the account had been verified and knew the identity of the person to whom they were remitting the account's proceeds, and knew, or were deliberately indifferent to the fact, that those identities did not correspond. The Aylo Defendants' own verification and compliance systems accordingly knew, or should have known, that the account and the content trading on Plaintiff's likeness were controlled and monetized by a person other than Plaintiff.

124. From receipt of Plaintiff's 2024 written notice forward, the Aylo Defendants acted with actual knowledge that the content depicting Plaintiff was not consensual and was the product of force and coercion, and their continued publication and monetization of that content for approximately two years thereafter constituted knowing participation in the venture, and knowing receipt of its benefits, within the meaning of 18 U.S.C. § 1591(a)(2).

125. The Aylo Defendants' conduct accordingly satisfies both the civil standard of 18 U.S.C. § 1595(a) and the knowing-conduct standard of 18 U.S.C. § 1591(a)(2), and the claim

pleaded in this Count falls within the exemption of 47 U.S.C. § 230(e)(5) under any construction of that provision.

126. As a direct and proximate result of the Aylo Defendants' conduct, Plaintiff has suffered the injuries alleged herein.

WHEREFORE, Plaintiff Jane Doe respectfully requests judgment in her favor and against the Aylo Defendants, jointly and severally, on Count V as follows: (1) compensatory damages in an amount to be determined at trial; (2) punitive damages; (3) reasonable attorneys' fees and costs pursuant to 18 U.S.C. § 1595(a); (4) injunctive relief as set forth in the Prayer for Relief; and (5) such other and further relief as the Court, in its discretion, deems just and proper.

**COUNT VI - NONCONSENSUAL DISCLOSURE OF INTIMATE IMAGES, 15 U.S.C. § 6851**

**(AGAINST DEFENDANT DARYMAN)**

127. The allegations set forth in the preceding paragraphs are incorporated herein by reference as though set forth in full.

128. The photographs and videos described above are intimate visual depictions of Plaintiff, an identifiable individual, within the meaning of 15 U.S.C. § 6851.

129. Daryman disclosed, transferred, and published those intimate visual depictions in and affecting interstate and foreign commerce, including on Pornhub.com and on the X platform, without Plaintiff's consent.

130. Daryman knew that Plaintiff had not consented to the disclosures, and at minimum acted with reckless disregard for whether she had consented, because he obtained the underlying content through force and coercion and published it over her objection.

131. Plaintiff did not consent to the disclosures, and no exception under 15 U.S.C. § 6851 applies to any of them.

132. As a direct and proximate result of Daryman's disclosures, Plaintiff has suffered the injuries alleged herein, and the disclosures are continuing.

WHEREFORE, Plaintiff Jane Doe respectfully requests judgment in her favor and against Defendant Elijah Daryman on Count VI as follows: (1) liquidated damages of one hundred fifty thousand dollars or actual damages, whichever is greater, pursuant to 15 U.S.C. § 6851(b); (2) punitive damages as permitted by law; (3) reasonable attorneys' fees and costs; (4) a temporary restraining order and preliminary and permanent injunctive relief ordering Daryman to remove, delete, and cease disclosing every intimate visual depiction of Plaintiff, as set forth in the Prayer for Relief; and (5) such other and further relief as the Court, in its discretion, deems just and proper.

**COUNT VII - CIVIL ACTION FOR HUMAN TRAFFICKING, 18 PA.C.S. § 3051**

**(AGAINST DEFENDANT DARYMAN)**

133. The allegations set forth in the preceding paragraphs are incorporated herein by reference as though set forth in full.

134. Daryman subjected Plaintiff to sexual servitude within the meaning of 18 Pa.C.S. §§ 3001, 3011, and 3012, by using force, threats of force, physical abuse, and a scheme intended to cause Plaintiff to believe that refusal would result in serious harm, to cause and compel Plaintiff to engage in commercial sexual activity.

135. Plaintiff is an individual who was a victim of the sex trade and of human trafficking within the meaning of 18 Pa.C.S. § 3051, and Daryman is a perpetrator of that trafficking.

136. As a direct and proximate result of Daryman's conduct, Plaintiff has suffered physical injury, severe emotional distress, and economic loss as alleged herein.

137. Daryman's acts were willful and malicious. He struck, strangled, and beat Plaintiff to compel her performances; he took every dollar those performances earned; he removed her to

Puerto Rico to cut her off from help; and after she escaped he continued, through 2026, to publish and monetize the sexual content he had extracted from her by force. Each of those acts was done deliberately, for his own profit, and with knowledge of the harm it would cause her.

138. Pursuant to 18 Pa.C.S. § 3051, Plaintiff is entitled to recover her actual and compensatory damages, punitive damages, and, because Daryman's acts were willful and malicious, treble damages on her actual damages; and, as a prevailing victim of human trafficking, she shall be awarded her reasonable attorney fees and costs.

WHEREFORE, Plaintiff Jane Doe respectfully requests judgment in her favor and against Defendant Elijah Daryman on Count VII as follows: (1) actual and compensatory damages in an amount to be determined at trial; (2) treble damages on Plaintiff's actual damages pursuant to 18 Pa.C.S. § 3051, Daryman's acts having been willful and malicious; (3) punitive damages; (4) reasonable attorney fees and costs, which 18 Pa.C.S. § 3051 mandates for a prevailing victim of human trafficking; (5) injunctive relief as set forth in the Prayer for Relief; and (6) such other and further relief as the Court, in its discretion, deems just and proper.

## COUNT VIII - UNLAWFUL DISSEMINATION OF INTIMATE IMAGES, 42 PA.C.S. § 8316.1

## (AGAINST DEFENDANT DARYMAN)

139. The allegations set forth in the preceding paragraphs are incorporated herein by reference as though set forth in full.

140. Daryman disseminated visual depictions of Plaintiff, a current or former sexual or intimate partner, in states of nudity and engaged in sexual conduct, without Plaintiff's consent, in violation of 18 Pa.C.S. § 3131.

141. Daryman made those disseminations with the intent to harass, annoy, and alarm Plaintiff, as evidenced by, among other things, his continued creation of new distribution accounts after Plaintiff escaped him, went no-contact, and demanded that the content come down.

142. As a direct and proximate result of those disseminations, Plaintiff has suffered harm, including severe emotional distress, humiliation, and reputational injury, and is entitled to relief under 42 Pa.C.S. § 8316.1.

WHEREFORE, Plaintiff Jane Doe respectfully requests judgment in her favor and against Defendant Elijah Daryman on Count VIII as follows: (1) compensatory damages, including damages for emotional distress, in an amount to be determined at trial; (2) exemplary damages as permitted by law; (3) reasonable attorneys' fees and costs pursuant to 42 Pa.C.S. § 8316.1(b); (4) injunctive relief as set forth in the Prayer for Relief; and (5) such other and further relief as the Court, in its discretion, deems just and proper.

**COUNT IX - NONCONSENSUAL DISCLOSURE OF INTIMATE IMAGES, N.J.S.A. 2A:58D-1**

**(AGAINST DEFENDANT DARYMAN, PLEADED IN THE ALTERNATIVE)**

143. The allegations set forth in the preceding paragraphs are incorporated herein by reference as though set forth in full.

144. In the alternative, and to the extent New Jersey law governs disclosures that Daryman made from his residence in New Jersey, Daryman disclosed photographs and recordings of Plaintiff with her intimate parts exposed and engaged in sexual conduct, without Plaintiff's consent and without license or privilege to do so.

145. As a direct and proximate result of those disclosures, Plaintiff has suffered the injuries alleged herein and is entitled to actual damages or statutory liquidated damages, punitive damages, and reasonable attorneys' fees and costs pursuant to N.J.S.A. 2A:58D-1.

WHEREFORE, Plaintiff Jane Doe respectfully requests judgment in her favor and against Defendant Elijah Daryman on Count IX as follows: (1) actual damages or statutory liquidated damages, whichever is greater, for each violation; (2) punitive damages; (3) reasonable attorneys' fees and costs; (4) injunctive relief as set forth in the Prayer for Relief; and (5) such other and further relief as the Court, in its discretion, deems just and proper.

**COUNT X - INVASION OF PRIVACY: PUBLICITY GIVEN TO PRIVATE LIFE**

**(AGAINST DEFENDANT DARYMAN)**

146. The allegations set forth in the preceding paragraphs are incorporated herein by reference as though set forth in full.

147. The images and recordings of Plaintiff that Daryman published concern the most private aspects of Plaintiff's life, their publication is highly offensive to a reasonable person, and they are of no legitimate concern to the public.

148. Daryman gave publicity to those private matters by publishing them to the public at large on commercial websites and social-media platforms, without Plaintiff's consent.

149. As a direct and proximate result of that publicity, Plaintiff has suffered the injuries alleged herein.

WHEREFORE, Plaintiff Jane Doe respectfully requests judgment in her favor and against Defendant Elijah Daryman on Count X as follows: (1) compensatory damages in an amount to be determined at trial; (2) punitive damages; (3) injunctive relief as set forth in the Prayer for Relief; and (4) such other and further relief as the Court, in its discretion, deems just and proper.

**COUNT XI - INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS**

**(AGAINST DEFENDANT DARYMAN)**

150. The allegations set forth in the preceding paragraphs are incorporated herein by reference as though set forth in full.

151. Daryman's conduct, including strangling and beating Plaintiff, compelling her into commercial sexual activity through violence, confiscating the proceeds, and publishing sexually explicit content of her to the world over her objection and continuing to do so years after she escaped him, is extreme and outrageous and utterly intolerable in a civilized society.

152. Daryman engaged in that conduct intentionally, or with reckless disregard of the certainty that it would cause Plaintiff severe emotional distress.

153. As a direct and proximate result of Daryman's conduct, Plaintiff has suffered severe emotional distress with physical manifestations, as will be established by competent evidence.

WHEREFORE, Plaintiff Jane Doe respectfully requests judgment in her favor and against Defendant Elijah Daryman on Count XI as follows: (1) compensatory damages in an amount to be determined at trial; (2) punitive damages; and (3) such other and further relief as the Court, in its discretion, deems just and proper.

**COUNT XII - CONVERSION**

**(AGAINST DEFENDANT DARYMAN)**

154. The allegations set forth in the preceding paragraphs are incorporated herein by reference as though set forth in full.

155. The proceeds of the performances and content that Plaintiff was compelled to produce, including all sums paid by or through OnlyFans, Chaturbate, CamSoda, and any other platform on account of Plaintiff's performances, were the property of Plaintiff.

156. Daryman exercised dominion and control over those proceeds, deprived Plaintiff of them entirely, and converted them to his own use, without Plaintiff's consent and without lawful justification.

157. As a direct and proximate result of Daryman's conversion, Plaintiff has been deprived of the entirety of those funds, in an amount to be established through discovery of the platforms' payment records.

WHEREFORE, Plaintiff Jane Doe respectfully requests judgment in her favor and against Defendant Elijah Daryman on Count XII as follows: (1) compensatory damages equal to all converted proceeds, with prejudgment interest; (2) punitive damages; (3) the imposition of a constructive trust upon all funds and property traceable to the converted proceeds; and (4) such other and further relief as the Court, in its discretion, deems just and proper.

**COUNT XIII - UNJUST ENRICHMENT AND ACCOUNTING**

**(AGAINST DEFENDANT DARYMAN)**

158. The allegations set forth in the preceding paragraphs are incorporated herein by reference as though set forth in full.

159. Daryman received and retained the entirety of the revenue generated by Plaintiff's coerced performances and content, a benefit conferred at Plaintiff's expense through Plaintiff's own compelled labor and sexual exploitation.

160. Daryman appreciated and accepted that benefit under circumstances in which it would be inequitable for him to retain it without payment to Plaintiff, and equity requires that he account for and disgorge it.

161. Because Daryman held all account credentials and all payment records, the full amount of his enrichment is known to him and to the platforms, and an accounting is necessary to establish it.

WHEREFORE, Plaintiff Jane Doe respectfully requests judgment in her favor and against Defendant Elijah Daryman on Count XIII as follows: (1) an accounting of all revenue received from every account and platform monetizing Plaintiff's likeness or performances; (2) restitution and disgorgement of all such revenue, with prejudgment interest; and (3) such other and further relief as the Court, in its discretion, deems just and proper.

## COUNT XIV - ASSAULT AND BATTERY

## (AGAINST DEFENDANT DARYMAN)

162. The allegations set forth in the preceding paragraphs are incorporated herein by reference as though set forth in full.

163. Daryman intentionally caused harmful and offensive contact with Plaintiff's person on repeated occasions, including by slapping her across the face with an open hand, striking her with a closed fist, and strangling her.

164. Daryman also intentionally placed Plaintiff in reasonable and imminent apprehension of harmful and offensive contact on repeated occasions, including through threats of violence he had proven himself willing to carry out.

165. Plaintiff did not consent to any such contact, and no privilege or justification attached to any of it.

166. The assaults and batteries were components of the continuing course of coercive conduct alleged herein, and the limitations period applicable to them was tolled by that continuing course of conduct and by the duress under which Daryman held Plaintiff.

167. As a direct and proximate result of the assaults and batteries, Plaintiff suffered physical injury, including the documented bruising, together with pain, fear, and severe emotional distress.

WHEREFORE, Plaintiff Jane Doe respectfully requests judgment in her favor and against Defendant Elijah Daryman on Count XIV as follows: (1) compensatory damages in an amount to be determined at trial; (2) punitive damages; and (3) such other and further relief as the Court, in its discretion, deems just and proper.

**COUNT XV - FAILURE TO REMOVE NONCONSENSUAL INTIMATE VISUAL DEPICTIONS AFTER NOTICE**

**(AGAINST THE AYLO DEFENDANTS)**

168. The allegations set forth in the preceding paragraphs are incorporated herein by reference as though set forth in full.

169. Section 3 of the TAKE IT DOWN Act, Pub. L. No. 119-12 (2025), requires a covered platform, upon receipt of a valid removal request from an identifiable individual or an authorized representative of that individual, to remove the nonconsensual intimate visual depiction as soon as possible and in no event later than 48 hours after receiving the request, and to make reasonable efforts to identify and remove any known identical copies of the depiction. Every covered platform has been required to comply since May 19, 2026.

170. Each of the Aylo Defendants owns, operates, or controls Pornhub.com, a covered platform within the meaning of that Act, which serves the public, hosts content provided by its users, and makes that content available to the public.

171. On September 15, 2026, at 9:28 p.m., Plaintiff's counsel served a written removal request upon the Aylo Defendants by electronic mail addressed to their Legal Department at legal@aylo.com and to their designated agent at copyright@pornhub.com. The request carried counsel's electronic signature; identified Plaintiff by name; identified the account trading on her

likeness by its alias and the seven intimate visual depictions published under it; stated that the depictions were produced through force and coercion and published without Plaintiff's consent; demanded their permanent removal, the termination of the account, and the application of hash-matching or equivalent technology to block re-upload across every property the Aylo Defendants own or operate; and supplied counsel's contact information. The request satisfied every requirement of a valid removal request.

172. The 48-hour period expired at 9:28 p.m. on September 17, 2026. The Aylo Defendants removed nothing within it.

173. The only communications the Aylo Defendants made within that period issued from a content-moderation ticketing queue, under ticket number 7908459, and asked that Plaintiff photograph herself holding a government identification document and photograph herself a second time holding a handwritten note bearing that day's date. No attorney for the Aylo Defendants responded to the request at all.

174. On September 21, 2026, at 12:23 p.m., more than five days after receiving the request and more than three and one-half days after the statutory period expired, the Aylo Defendants stated, through the same ticketing queue, that the reported account had been removed. They have never stated that all seven depictions were removed; have never identified what, if anything, they did to identify and remove known identical copies; and have never responded to the demand that they preserve the records of the account and its content.

175. The failure was not a failure of capability. Five of the seven depictions came down within days of Plaintiff's August 20, 2026 request, and the account itself came down on the first business day after counsel declined, in writing on September 18, 2026, to continue corresponding

with the ticketing queue. Removal was within the Aylo Defendants' immediate power at every moment after Plaintiff's first written notice to them in 2024.

176. The duty pleaded in this Count is imposed by federal statute upon the platform's own conduct, namely its obligation to operate a notice-and-removal process and to act upon a valid request within a fixed period, and liability for its breach does not require that the Aylo Defendants be treated as the publisher or speaker of information provided by another information content provider.

177. The TAKE IT DOWN Act was enacted for the protection of the class of persons to which Plaintiff belongs, that is, identifiable individuals whose intimate visual depictions are published without their consent. The injury Plaintiff sustained during and after the statutory period is the injury the statute was enacted to prevent, and the violation was a substantial factor in bringing it about. The Aylo Defendants' violation of that statute is negligence per se.

178. Further, and in the alternative, by continuing to make the seven depictions available for viewing, download, and distribution after September 15, 2026, and until September 21, 2026, with actual knowledge that the depictions were of Plaintiff and had been published without her consent, the Aylo Defendants themselves disclosed intimate visual depictions of Plaintiff within the meaning of 15 U.S.C. § 6851(b)(1).

179. As a direct and proximate result of the conduct alleged in this Count, Plaintiff suffered severe emotional distress, humiliation, and continuing reputational and economic injury, and every additional day of publication after September 18, 2026 compounded that injury.

WHEREFORE, Plaintiff Jane Doe respectfully requests judgment in her favor and against the Aylo Defendants, jointly and severally, on Count XV as follows: (1) compensatory damages in an amount to be determined at trial; (2) liquidated damages of one hundred fifty thousand dollars

for each nonconsensual disclosure, or actual damages, whichever is greater, pursuant to 15 U.S.C. § 6851(b); (3) punitive damages; (4) reasonable attorneys' fees and costs; (5) injunctive relief as set forth in the Prayer for Relief, including an order compelling the application of hash-matching or equivalent technology across every property the Aylo Defendants own or operate; and (6) such other and further relief as the Court, in its discretion, deems just and proper.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff Jane Doe respectfully requests that this Court enter judgment in her favor and against Defendants, and award the following relief:

(a) compensatory damages against all Defendants, jointly and severally where the law permits, in an amount to be determined at trial;

(b) liquidated damages of one hundred fifty thousand dollars or actual damages, whichever is greater, against Defendant Daryman and, as set forth in Count XV, against the Aylo Defendants pursuant to 15 U.S.C. § 6851, together with all statutory damages available under 42 Pa.C.S. § 8316.1 and N.J.S.A. 2A:58D-1;

(c) punitive damages against all Defendants in an amount sufficient to punish and deter, and treble damages against Defendant Daryman pursuant to 18 Pa.C.S. § 3051;

(d) a temporary restraining order and preliminary and permanent injunctive relief ordering Defendant Daryman to: (i) immediately cease creating, posting, publishing, distributing, and promoting any image, recording, or account depicting or impersonating Plaintiff; (ii) delete and destroy every intimate visual depiction of Plaintiff in his possession, custody, or control; (iii) disclose and transfer to Plaintiff the credentials for every account created in Plaintiff's name or likeness, including the OnlyFans, Chaturbate, CamSoda, Pornhub, and X accounts described herein; and (iv) refrain from any contact with Plaintiff, direct or indirect, by any means;

(e) a temporary restraining order and preliminary and permanent injunctive relief ordering the Aylo Defendants to: (i) remove and permanently delete every image and recording depicting Plaintiff from Pornhub.com and every other property they own or operate; (ii) terminate the account or accounts trading on Plaintiff's likeness; (iii) employ hash-matching or equivalent technology to block the re-uploading of the removed content; and (iv) preserve all records concerning the accounts and content, including upload logs, IP addresses, payment and payout records, and identity-verification records;

(f) a temporary restraining order and preliminary and permanent injunctive relief ordering Defendant X Corp. to: (i) suspend and remove the accounts described herein, including the accounts using the handles @lylaluvxxx and @lylaluvv, and every other account impersonating Plaintiff or distributing intimate depictions of her; (ii) remove and permanently delete every intimate depiction of Plaintiff from its platform; and (iii) preserve all records concerning those accounts, including registration information, IP logs, and device identifiers;

(g) an accounting, restitution, disgorgement, and the imposition of a constructive trust as requested in Counts XII and XIII;

(h) reasonable attorneys' fees and costs of suit pursuant to 18 U.S.C. § 1595 (for violations of 18 U.S.C. §§ 1589, 1591, and 1594), 15 U.S.C. § 6851, 18 Pa.C.S. § 3051, 42 Pa.C.S. § 8316.1, and N.J.S.A. 2A:58D-1;

(i) prejudgment and postjudgment interest as permitted by law; and

(j) such other and further relief as the Court, in its discretion, deems just and proper.

**JURY DEMAND**

Plaintiff demands a trial by jury on all issues so triable.

Respectfully submitted,

**MARGOLIS EDELSTEIN**

*BY: /s/ John M. Nolan III*
John M. Nolan III, Esq.
PA Attorney ID: 317001
The Curtis Center, Suite 400E
170 S. Independence Mall West
Philadelphia, PA 19106
Phone: (215) 931-5848
jnolan@margolisedelstein.com
*Attorney for Plaintiff Jane Doe*

Date: September 30, 2026